IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., a Delaware corporation<br><br>Plaintiff,<br><br>vs.<br><br>FISHER-PRICE, INC., a Delaware corporation; and EXPRESSO FITNESS CORPORATION, a Delaware corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUBSTITUTION OF PARTIES**<br><br>Case No: 1:08-CV-10 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Plaintiff ICON Health & Fitness, Inc. ("ICON") has filed a motion[1] under Rule 25 of the Federal Rules of Civil Procedure to substitute Interactive Fitness Holdings, LLC ("IFH") in place of Defendant Expresso Fitness Corporation ("Expresso") as a party in this case on the ground that IFH is Expresso's successor-in-interest. After considering the parties' submissions, the court concludes that IFH is not a successor-in-interest, and denies the motion.

### BACKGROUND

1. ICON manufactures, markets, and sells fitness equipment.[2]

2. In July 2008, ICON filed its first amended complaint adding Expresso as a defendant

---

[1] Plaintiff's Motion for Substitution of Parties Under Fed. R. Civ. P. 25, docket no. 43, filed September 27, 2010.

[2] Non-party Interactive Fitness Holding LLC's Limited Appearance for Purposes of Opposing Plaintiff's Motion for Substitution of Parties ("Opposing Memorandum") at 3, docket no. 53, filed November 5, 2010.

in this patent infringement case.[3]

3. In November 2009, Expresso filed for Chapter 7 bankruptcy in the Northern District of California. The bankruptcy case was closed in December 2009.[4]

4. Up until its financial demise, Expresso manufactured and sold stationary bicycles.[5]

5. Non-party, IFH, is a limited liability company. Investor William Stensrud is its sole financial backer.[6]

6. Around the time of the bankruptcy, IFH acquired the assets of Expresso.[7]

ICON seeks to substitute IFH for Express as the defendant in this case under Rule 25(c) of the Federal Rules of Civil Procedure.[8]

## DISCUSSION

When one corporation sells or transfers its assets to another, the transferee company is not responsible for the debts and liabilities of the transferor except for four generally recognized exceptions:

> (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or

---

[3] Opposing Memorandum at 3; Memorandum of Points and Authorities in Support of Plaintiff's Motion for Substitution of Parties Under Fed. R. Civ. P. 25 ("Supporting Memorandum") at 1, docket no. 44, filed September 27, 2010; First Amended Complaint, docket no. 10, filed July 16, 2008.

[4] Supporting Memorandum at 2.

[5] Opposing Memorandum at 3.

[6] Opposing Memorandum at 3.

[7] Supporting Memorandum at 2; Opposing Memorandum at 7.

[8] Supporting Memorandum at 3.

(4) the transaction is entered into fraudulently in order to escape liability for such debts.[9]

In this case, ICON argues that IFH is a "mere continuation" of Espresso.[10] ICON states that there are two requirements for proving that a corporation is a mere continuation of a prior corporation: "(1) only one corporation remains after the transfer of assets is complete, and (2) a common identity of stocks, stockholders, and directors between the two corporations."[11]

**Ownership and Control of the Two Corporations**

In support of its contention that IFH is a mere continuation of Expresso, ICON states that IFH's CEO, Brian Button, was also Expresso's CEO and was listed as both a creditor and debtor in Expresso's bankruptcy filings. Similarly, Mark Urlage, IFH's Vice President of Sales, was also listed as one of Expresso's creditors.[12]

In opposition, IFH asserts that it acquired Expresso's assets in an arm's length transaction, and that therefore, the "mere continuation" exception does not apply.[13] IFH explains that Stensrud, IFH's sole financial backer, formed IFH after submitting the winning proposal to

---

[9] *Macris & Assoc., Inc. v. Neways, Inc.*, 986 P.2d 748, 752 (Utah App. 1999)(quoting *Florom v. Elliott Mfg.*, 867 F.2d 570, 575 n.2 (10th Cir. 1989)). ICON apparently believes that Utah law applies while IFH states that federal common law governs in federal question cases such as this patent infringement case. (Opposing Memorandum at 9-10.) IFH concedes, however, that Utah law "does not appear to differ markedly from federal common law or the law of most other states." (*Id.* at 10, footnote 3.)

[10] Supporting Memorandum at 4-5.

[11] Supporting Memorandum at 4 (citing *Decius v. Action Collection Serv., Inc.*, 105 P.3d 956, 959 (Utah App. 2004)).

[12] Supporting Memorandum at 5.

[13] Opposing Memorandum at 11 (citing *Harris v. T.I., Inc.*, 413 S.E.2d 605, 609 (Va. 1992); *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977); *Last Atlantis Capital LLC v. AGS Secpecialists LLC*, 601 F. Supp. 2d 1050, 1053 (N.D. Ill. 2009); *Glentel, Inc. v. Wireless Ventures, LLC*, 362 F. Supp. 2d 992, 1005 (N.D. Ind. 2005)).

acquire Expresso's assets in a foreclosure sale initiated and conducted by certain third-party secured creditors of Expresso.[14] After forming IFH, Stensrud hired Brian Button as its CEO.[15] While acknowledging that Button was once the CEO of Expresso, IFH states that Button was asked to step down when Expresso began experiencing financial difficulties.[16] Of importance to this case, IFH states that neither Stensrud nor Button had any influence or control over Expresso, its board of directors, or its creditors at the time of the foreclosure sale.[17] Further, neither Stensrud nor Button had any self-dealing financial interest in Stensrud's bids for Expresso's assets.[18] All proceeds from the foreclosure sale went to the secured creditors, and none of the proceeds went to unsecured creditors or investors of any class.[19] Moreover, the foreclosure sale agreement entered into by IFH and the creditors expressly provided that IFH was acquiring the assets free from any liabilities.[20]

As both parties recognize, in order for a corporation to be a "mere continuation," there must be a common identity of stocks, directors, and shareholders between the two companies.[21] In this case, that common identity does not exist. Stensrud is IFH's sole financial backer. Before

---

[14]Opposing Memorandum at 3-4.

[15]Opposing Memorandum at at 4.

[16]Opposing Memorandum at at 5.

[17]Opposing Memorandum at 4.

[18]Opposing Memorandum at 4.

[19]Opposing Memorandum at 4.

[20]Opposing Memorandum at 7.

[21]Opposing Memorandum at 13; Supporting Memorandum at 4 (both citing *Decius*, 105 P.3d at 959).

forming IFH, Stensrud had only a small, indirect minority interest in Expresso as a limited partner in one of several venture capital groups that owned Expresso. IFH states that "this entity was known as Enterprise Partners, and importantly, Enterprise Partners was not on the board of directors and exercised no control at the time of the Foreclosure Sale."[22] Further, with Expresso's financial demise, Stensrud's financial position became worthless and both he and Button (who was also a limited partner in Enterprise and owned a small amount of stock individually) lost all of the money they had invested.[23] IFH further states that Expresso's controlling shareholder was Sierra Ventures, of which neither Stensrud nor Button was a part.[24]

Prior to IFH's formation, Stensrud and Button exercised no control over Expresso. Button was asked to resign, and did resign, his position as Expresso's CEO and as a member of its board of directors, months before the foreclosure sale.[25] And Expresso had a new CEO, David Grenewetzki, at the time of the foreclosure sale.[26] Finally, the foreclosure sale was conducted by third-party creditors, after soliciting multiple bids and engaging in arm's length negotiations.[27]

IFH acknowledges that it did hire some former Expresso employees, including George Pardo, Expresso's former CFO, and Mark Urlage, a former vice president of sales of Expresso. Neither of these employees own any interest in IFH, however, and did not exercise any control

---

[22]Opposing Memorandum at 14.

[23]Opposing Memorandum at 14.

[24]Opposing Memorandum at 14.

[25]Opposing Memorandum at 14.

[26]Opposing Memorandum at 14.

[27]Opposing Memorandum at 14-15.

over the selection of the asset purchaser.[28] The court agrees with IFH that this overlap in management is insufficient to impose successor liability.[29]

**IFH Has Not Held Itself Out as Expresso**

ICON states that "[a] corporation representing itself to clients or customers as a continuation of the prior corporation supports a finding that the successor is a mere continuation of the prior corporation."[30] ICON alleges that IFH is still selling the same infringing bikes that Expresso was selling and is servicing bikes purchased by Expresso's former customers. As further evidence of its "holding out" argument, ICON cites a press release in which IFH announced the asset acquisition, and IFH's use of Expresso's website. ICON contends that IFH is simply Expresso operating under a different name.[31]

IFH responds that the evidence cited by ICON does not reflect that it has held itself out as Expresso. IFH states that the press release "correctly stated that IF Holdings had acquired Expresso Fitness' 'product line and intellectual property.'"[32] As IFH points out, "[t]hese were, in fact, the assets purchased."[33] Again, the court agrees that neither IFH's press release nor its use of the purchased assets including the website and corresponding copyrights and trademarks,

---

[28] Opposing Memorandum at 15.

[29] *See, e.g., Glentel, Inc.*, 362 F. Supp. 2d at 1005 (rejecting successor liability where purchaser's officer was father of shareholders of predecessor where negotiations were at arm's length).

[30] Supporting Memorandum at 4 (citing *Decius*, 105 P.3d at 960.

[31] Supporting Mmorandum at 4-5.

[32] Opposing Memorandum at 15.

[33] Opposing Memorandum at 15.

customer lists, and inventory mean that IFH is holding itself out has Expresso.[34]

Finally, IFH asserts that it has expressly *not* held itself out as Expresso. For example, it has not honored Expresso's product warranties or any of its other past contractual obligations.[35] Indeed, IFH informed its customers and vendors of this fact in writing once it acquired the assets.[36] The mere fact that IFH services Expresso's products does not support successor liability.

**Expresso Still Remains as a Separate Entity**

ICON asserts that "California's entity registration for 'Expresso Fitness Corporation' has been forfeited, and its bankruptcy filings indicate that Expresso claimed it had no assets at the time of filing. Thus, ICON contends that IFH is the only corporate entity remaining after the demise of Expresso."[37]

IFH responds that "Expresso Fitness, though financially defunct, still exists."[38] It states that an entity liquidated in a Chapter 7 bankruptcy continues to exist. Further, unlike a bankruptcy under Chapter 11, a corporate bankruptcy under Chapter 7 does not result in a discharge of debt. Further, under Delaware corporation law (which applies to Expresso) even a dissolved entity remains subject to suit for three years.[39]

With regard to the "single entity" argument, the court concludes that ICON has failed to

---

[34] See Opposing Memorandum at 15-16.

[35] Opposing Memorandum at 12.

[36] Opposing Memorandum at 12-13, 16.

[37] Supporting Memorandum at 5.

[38] Opposing Memorandum at 16.

[39] Opposing Memorandum at 16-17 (citing 8 Del. C. § 278).

show that Expresso no longer exists and that only IFH remains as an entity. Even if ICON could show that Expresso has ceased to exist, however, such a showing would be insufficient to support successor liability under the facts of this case.

**ORDER**

ICON's motion to substitute Interactive Fitness Holdings, LLC in place of Expresso Fitness Corporation as a party in this case is **DENIED**.[40]

February 21, 2011.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[40] Plaintiff's Motion for Substitution of Parties Under Fed. R. Civ. P. 25, docket no. 43, filed September 27, 2010.